# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXLE HOLDING COMPANY, LLC,<br><br>                          Plaintiff,<br><br>v.<br><br>ARB CORPORATION LTD,<br><br>                          Defendant. | Case No. 22-cv-1472-MMA (JLB)<br><br>**ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISMISS; AND (2) DENYING AS MOOT PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY**<br><br>[Doc. No. 6] |

Plaintiff Axle Holding Company, LLC ("Plaintiff") brings this breach of contract action against Defendant ARB Corporation LTD ("Defendant"). *See* Doc. No. 1-2 at 2–11 ("Complaint"). Defendant moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. *See* Doc. No. 6. Plaintiff filed an opposition to Defendant's motion, to which Defendant replied. *See* Doc. Nos. 14, 15. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 16. For the following reasons, the Court **GRANTS** Defendant's motion to dismiss and **DENIES AS MOOT** Plaintiff's request for jurisdictional discovery.

# I. Background

Plaintiff "is a Delaware limited liability company that was doing business in California at times relevant to this Complaint." Compl. ¶ 5. Defendant is an Australian company headquartered in Kilsyth, Australia. *Id.* ¶ 6; *see also* Doc. No. 6-1 ("McCann Decl.") at ¶ 2.

In August 2021, Plaintiff engaged Capstone Partners ("Capstone") to serve as its exclusive sell-side advisor for the sale of one of its subsidiaries, Morris 4x4 Center ("M4"). Compl. ¶ 9. M4 is a global distributor of Jeep parts and accessories. *Id.* Capstone invited Defendant and another potential acquirer, Northridge4X4 of Aftermarket Performance Group, LLC ("APG"), to participate in the bidding process to purchase M4. *Id.* ¶¶ 2, 10. "Paul Louie, a Capstone Managing Director, primarily led the M4 sale effort." *Id.* ¶ 10.

"Although there were a handful of other potential buyers for M4, [Defendant] and APG quickly emerged as the most logical buyers early in the sales process[.]" *Id.* ¶ 11. "Louie had conversations with representatives from both [Defendant] and APG and provided both with diligence materials." *Id.* As a condition of Defendant's participation in the bidding process, Defendant entered into the Confidentiality and Non-Disclosure Agreement ("NDA") on August 19, 2021. *Id.* ¶¶ 1, 13.[1] "On or around September 21, 2021, [Defendant] informed Capstone that it would not make a bid to purchase M4." *Id.* ¶ 17. According to Plaintiff, Defendant breached the NDA by disclosing information to APG that "caused [APG] to believe it was the only remaining bidder for M4[,]" leading APG to significantly to reduce its bid to acquire M4. *Id.* ¶¶ 16–22. Plaintiff avers that it ultimately sold M4 to another purchaser for "$3.5 million less than the $15 million price

---

[1] A copy of the NDA is attached as Exhibit A to the Complaint. *See* Doc. No. 1-2 at 11. The NDA may be considered without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (stating that the court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment").

APG wanted to pay before [Defendant] interfered with the bidding process by breaching the NDA." *Id.* ¶ 23.  Plaintiff brings one claim in its Complaint: breach of the NDA.  *Id.* ¶¶ 26–30.[2]

## II. DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

#### 1.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction.  "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand a motion to dismiss." *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

"Unless directly contravened, [plaintiff's] . . . facts [are] taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima' facie case for personal jurisdiction exists." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citations omitted).  However, the court may not assume the truth of such allegations if they are contradicted by affidavit. *Data Disc*, 557 F.2d at 1284.  Rather, "plaintiff must submit admissible evidence to support its prima facie

---

[2] In its Complaint, Plaintiff does not specifically allege which state's laws it brings this claim under, although the Court notes that the terms of the NDA state that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Delaware." *See* Doc. No. 1-2 at 11.

case[]" for personal jurisdiction. *Am. Inst. of Intradermal Cosmetics, Inc. v. Soc'y of Permanent Cosmetic Prof'l*, 2013 U.S. Dist. LEXIS 58138, 2013 WL 1685558, at *4 (C.D. Cal. Apr. 16, 2013).

When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the Court's inquiry centers on whether exercising jurisdiction comports with due process. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific. *Boschetto*, 539 F.3d at 1016.

Here, Plaintiff does not argue that Defendant is subject to general jurisdiction in California; instead, it urges that specific jurisdiction exists. *See* Doc. No. 14. A three-part test is used to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If he does so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto*, 539 F.3d at 1016 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).

The exact form of jurisdictional inquiry depends on the nature of the claims at issue. *Picot*, 780 F.3d at 1212. For claims sounding in contract, courts generally apply a "purposeful availment" analysis and ask whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

2.   *Analysis*

Defendant challenges all three prongs of the specific personal jurisdiction test. Doc. No. 6 at 13–17. [3]  The Court begins its analysis with the purposeful availment prong.

Defendant argues that "[t]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* at 14 (citing *Burger King Corp.*, 471 U.S. at 478). Specifically, Defendant urges that it "signed the NDA in Australia" and "chose to walk away from the M4 bidding process prior to when bids were due and without submitting a bid." Doc. No. 6 at 15 (citing McCann Decl. ¶ 17).

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

According to Defendant, "[Plaintiff] does not allege (and cannot show) that [Defendant] 'directed' any conduct toward California."  Doc. No. 6 at 15.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'"  *Boschetto*, 539 F.3d at 1016 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).  Contracting with a party who is a resident of the forum state is insufficient, on its own, to warrant personal jurisdiction.  *Burger King Corp.*, 471 U.S. at 478; *see also Boschetto*, 539 F.3d at 1017 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum[.]").  Instead, a court's exercise of jurisdiction must be linked to a defendant's own affiliation with the forum state, not based on "random, fortuitous, or attenuated" contacts the defendant has due to his interactions with those affiliated with the state.  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475).  To determine whether sufficient contacts exist, the Court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 479) (quotation marks omitted).

Defendant is a company formed under Australian law and headquartered in Kilsyth, Australia.  McCann Decl. ¶ 2.  "None of [Defendant's] officers or directors reside in California."  *Id.*  The Confidentiality and Non-Disclosure Agreement was executed on behalf of Defendant in Kilsyth, Australia.  *Id.* ¶ 17.  Defendant has no offices, real property, equipment or other personal property, employees, bank accounts, telephone listing, or mailing address in California.  *Id.* ¶¶ 8, 10–14.  Plaintiff initiated contact with Defendant; a person from Capstone Partners contacted Defendant to advise that Capstone, on behalf of Plaintiff, was seeking bids for the purchases of M4.  *Id.* ¶ 17.

1    In its opposition to the motion to dismiss, Plaintiff does not contradict these facts.[4]

2    Instead, Plaintiff contends that Defendant "purposefully availed itself of California by

3    engaging in extensive diligence pursuant to the NDA with [Plaintiff's] agent and M4

4    management in California, to purchase a company in California."  Doc. No. 14 at 9.

5    Specifically, Plaintiff argues that "[t]he parties entered into the NDA to initiate and

6    engage in business in the State of California"; "[f]ollowing any purchase, M4 would

7    serve as a base for [Defendant's] U.S. operations"; that "the purpose of the Agreement

8    was to facilitate [Defendant's] potential purchase of a company operated in California—

9    leading to long-term, sustained contacts between [Defendant] and California"; and that

10   "[a]s [Defendant] explained to Louie, its interest in M4 was motivated in part by its

11   desire to grow its U.S. presence, and specifically to begin selling directly to end

12   customers through M4."  *Id.* at 10 (citing Doc. No. 14-1 ("Louie Decl.")) (quotation

13   marks omitted).  Additionally, Plaintiff urges that Defendant's entire "course of conduct

14   with [Plaintiff] took place through Paul Louie, [Plaintiff's] financial advisor and

15   representative in California" as "Louie held a series of telephone calls and virtual

16   meetings with [Defendant] from California, including several calls with M4's

---

[4] The Court notes that in its Complaint, Plaintiff alleges that Defendant "conducts business in California" and that Defendant's representatives "conducted business related to the Confidentiality and Nondisclosure agreement in Chula Vista, California."  Compl. ¶¶ 7–8.  Defendant addressed these allegations in its motion and contradicted these facts by affidavit.  *See* Doc. No. 6 at 12; *see also* Doc. No. 6-1 ("McCann Decl.") at ¶¶ 4–14 ("[Defendant] has a North American subsidiary, Air Locker, Inc., a company formed under Washington State law and located in Auburn, Washington . . . Air Locker, Inc. is legally and organizationally separate from [Defendant]. . . [Defendant] does not sell its products to wholesalers, retailers, or customers in the United States.  Instead, Air Locker, Inc. sells and ships ARB Corp. products to wholesalers and retailers in the United States.").  Plaintiff did not address this argument in its opposition briefing or proffer an affidavit that contravenes these facts.  The Court therefore concludes that Plaintiff has abandoned this line of argument.  *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09-4198, 2010 U.S. Dist. LEXIS 21843, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims") (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)); *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 2:10-4414, 2011 U.S. Dist. LEXIS 14253, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citations omitted).

management team, which was likewise based in California." *Id.* at 11 (citing Louie Decl. ¶¶ 3–8).

In support of its argument, Plaintiff cites cases such as *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), *Berdux v. Project Time & Const, Inc.*, 669 F. Supp. 2d 1094, 1101 (N.D. Cal. 2009), and *Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1451 (N.J.D. 1984). However, these cases are distinguishable as they involved contracts and contact between a plaintiff and defendant that created continuing relationships and obligations to forum residents. *See Burger King Corp.*, 471 U.S. at 479–80, 487 (concluding that a district court's exercise of jurisdiction did not offend due process where the defendant had "no physical ties to Florida . . . other than [a] brief training course" but the defendant "enter[ed] into a carefully structured 20-year [franchise] relationship that envisioned continuing and wide-reaching contacts with Burger King and Florida") (emphasis in original); *Berdux*, 669 F. Supp. 2d at 1101 ("[T]he Complaint is based on alleged misrepresentations made by nonresidents to a (then-) nonresident, and an allegedly fraudulent employment contract between nonresidents."); *Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1450 (N.J.D. 1984) ("The question presented by the facts in the case at bar is whether the purposeful activities of the nonresident defendant in purchasing goods from the resident plaintiff constitute sufficient contacts with New Jersey to render the assertion of jurisdiction over the defendant fair and reasonable for the limited purpose of this action."). In *Electro-Catheter Corp.*, for example, the court denied a motion to dismiss for lack of personal jurisdiction where, among other things,

> during a period of 14 years, defendant purchased sophisticated medical equipment from plaintiff by placing orders over the telephone and by mail; [] the goods were manufactured by plaintiff in New Jersey and delivered F.O.B. to defendant in Maryland; [] in recent years, the volume of purchases by defendant from plaintiff has been more than half a million dollars; [] over the course of their business relationship, the President of defendant visited

plaintiff's offices to discuss sales and other matters approximately 25 times
. . .

*Electro-Catheter Corp.*, 587 F. Supp at 1448–1456.

By contrast, the extent of the parties' contractual relationship here is an NDA that contains, in relevant part, the following terms: "The term of this Agreement shall be two (2) years from the Effective Date hereof and all rights and obligations will terminate after that period."  Doc. No. 1-2 at 11.

> In addition to the provision in Paragraph 2, without the prior written consent of [Axle], [ARB] will not and [ARB] will require its officers, directors, employees, agents, potential financing partners and advisors not to disclose to any person either (i) the fact that discussions or negotiations are taking place concerning a Potential Transaction between [ARB] and [Axle]; or (ii) any of the terms conditions or other facts with respect to any such Potential Transaction, including the status thereof.

Compl. ¶ 14 (alterations in original, emphasis omitted).  "The purposeful availment prong is satisfied when a defendant . . . creates continuing obligations to forum residents."  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir.1986).  Put simply, the NDA did not require continuing or extensive involvement with California.  "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum[.]"  *See Boschetto*, 539 F.3d at 1017 (citations omitted).

That Plaintiff's own activities took place in California with a California-based representative—Louie—is irrelevant; what matters is *Defendant's* activities.  *See Walden v. Fiore*, 571 U.S. 277, 279, 289 (2014) (finding impermissible a "minimum contacts" analysis that "allow[s] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis").  Plaintiff points to a declaration by Capstone's Managing Director, Paul Louie, in which Louie states that the "hosted a number of telephone calls and Zoom meetings with representatives of potential strategic buyers for M4, including [Defendant] and [APG]" and that "[t]ypically, [Defendant] would have traveled to California to meet with [Louie] and the M4 management team in person to discuss the

potential transaction" absent the COVID-19 pandemic.  Louie Decl. ¶ 6–7; *see also* Doc. No. 14 at 11–13.  However, the Court is not convinced this helps supply the minimum contacts necessary for this Court to exercise specific personal jurisdiction, and Plaintiff points to no authority to the contrary.  *See Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475) (explaining that a court's exercise of jurisdiction must be linked to a defendant's own affiliation with the forum state, not based on "random, fortuitous, or attenuated" contacts the defendant has due to his interactions with those affiliated with the state).

In sum, Plaintiff has not shown Defendant purposefully availed itself of the privilege of conducting activities in California.  Because Plaintiff fails at the first step of the specific jurisdiction analysis, the Court's jurisdictional inquiry ends and the case must be dismissed.  *Boschetto*, 539 F.3d at 1016 (citing *Pebble Beach Co.*, 453 F.3d at 1155).

**B.    Motion to Dismiss for Improper Venue**

In light of the Court's decision to grant the motion to dismiss for lack of personal jurisdiction, the Court need not reach the issue of venue.  The Court therefore **DENIES AS MOOT** Defendant's motion to dismiss for improper venue.

**C.    Jurisdictional Discovery**

The decision whether to grant jurisdictional discovery is typically within the discretion of the district court.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed."  *Am. West Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).  However, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."  *Pebble Beach Co.*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

Plaintiff requests "limited jurisdictional discovery on [Defendant's] contacts with APG" in the event "the Court concludes that the location of the breach is necessary to

evaluate personal jurisdiction." Doc. No. 14 at 13–14.  Plaintiff urges that "[Defendant] objects that [Plaintiff] did not allege the location of the breach . . . but that information is solely in the possession of [Defendant] and APG." *Id.* at 14.  As this Court's jurisdictional inquiry has ended at the first step, and Plaintiff's request is directed toward information pertinent to the second step of the jurisdictional analysis, the Court **DENIES AS MOOT** Plaintiff's request for jurisdictional discovery regarding location of the breach.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss based on the Court's finding that it lacks personal jurisdiction over Defendant. Additionally, the Court **DENIES AS MOOT** Plaintiff's request for jurisdictional discovery.  The Court **DISMISSES** this action without prejudice.  *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (noting that dismissal for lack of personal jurisdiction must be without prejudice).

**IT IS SO ORDERED**.

Dated:  March 8, 2023

HON. MICHAEL M. ANELLO
United States District Judge